IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBERT LAMBERT, | ) | |
|---|---|---|
| | ) | Civil Action No. 15-1451 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| XPRESS GLOBAL SYSTEMS, INC. | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CYNTHIA REED EDDY, United States Magistrate Judge

**I.     INTRODUCTION**

This is an employment discrimination action initiated by Plaintiff Robert Lambert ("Plaintiff" or "Lambert") against his former employer, Defendant Xpress Global Systems, Inc. ("Defendant" or "XGS"). The amended complaint consists of the following Counts: (I) Hostile Work Environment Age Discrimination in Violation of the Age Discrimination in Employment in Employment Act ("ADEA"); (II) Hostile Work Environment Age Discrimination in Violation of the Pennsylvania Human Relations Act ("PHRA"); (III) Retaliation in Violation of the ADEA; (IV) Retaliation in Violation of the PHRA; (V) Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA"); (VI) Disability Discrimination in Violation of the PHRA; (VII) Failure to Accommodate in Violation of the ADA; (VII) Failure to Accommodate in Violation of the PHRA; and (IX) Retaliation in Violation of the ADA.

Pending before the Court is XGS' motion to dismiss Counts I and II of the amended complaint, relating to Lambert's hostile work environment claims under the ADEA and PHRA, and Counts VII and VIII, relating to Lambert's failure to accommodate claims under the ADA

1

and PHRA. For the following reasons, XGS's motion will be denied.[1]

## II. FACTUAL BACKGROUND

For purposes of resolving the pending motion, the Court accepts all of the factual allegations in the amended complaint as true, and draws all reasonable inferences in a light most favorable to Lambert.[2]

Lambert worked for XGS as a terminal manager in the Pittsburgh service center from July 2013 until he was terminated in October 2014. During the relevant time period, Lambert was a 50-year-old man and he alleges having disabilities of type 1 diabetes and post-traumatic stress disorder ("PTSD"). Lambert's former supervisor at XGS, Scott Hilkene, was aware of his disabilities. During Lambert's employment, Hilkene made several derogatory comments to Lambert about his disabilities, and also made several ageist comments about Lambert in front of the employees that Lambert managed. Specific examples include use of the names "Alzheimer's Bob," "old-timer," "the old man," "old school," and "Senior Citizen Bob." On one occasion, Hilkene allegedly commented to other XGS employees that Lambert's management style was "old school" and that "the old guard needs to go."

Lambert avers that he was gradually stripped of the vast majority of his authority during his employment with XGS. Over time, Hilkene began to exclude Lambert from meetings regarding the direction of the warehouse and revoked Lambert's authority to schedule shifts for warehouse employees, despite Lambert's consistently high performance ratings. In June 2014, Hilkene and another XGS employee at the Pittsburgh facility, Nick Meyers, had a conversation

---

[1] In accordance with 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have the undersigned conduct any and all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit. ECF Nos. 9, 23.

[2] See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

2

wherein Hilkene referred to Meyers as "the young blood that this company is looking for" and "the future of the Pittsburgh facility." Hilkene told Meyers that "it was a young man's game" and that Hilkene "can't imagine that [Lambert] will last much longer" so Meyers should make sure to learn what he could from Lambert.

Hilkene was also hostile towards Lambert's requests for disability accommodations. Lambert claims that Hilkene frequently criticized Lambert for requesting time away from work in order to attend doctor's appointments. Upon making such requests, Lambert claims that Hilkene would frequently call him a baby and tell Lambert that he would not have diabetes in the first place if he took better care of himself. The amended complaint provides multiple examples of Hilkene's belittling conduct in response to Lambert's requests for disability accommodations. On one occasion, during a three-hour meeting, Hilkene told Lambert to "stop being a pussy" in response to Lambert's request to take a short break to eat because Lambert's blood sugar was low. During another lengthy meeting the following day, Hilkene allegedly refused to allow Lambert to retrieve Lambert's insulin from the refrigerator.

Throughout his employment at XGS, Lambert contacted the human resources department on numerous occasions regarding Hilkene's alleged discriminatory conduct towards Lambert. Many of Lambert's co-workers also contacted the H.R. department regarding same. In September 2014, Lambert filed a charge with the EEOC in relation to Hilkene's alleged discriminatory behavior. Shortly thereafter, Lambert again contacted the H.R. department detailing several specific complaints with respect to Hilkene's behavior. As a result of Lambert's complaints to H.R., Hilkene confronted, interrogated and berated Lambert during a discussion, causing Lambert's PTSD conditions to immediately worsen.

Due to the stress of working under Hilkene, Lambert's PTSD conditions became so

3

severe that he was unable to sleep for several days, and as a result, Lambert's wife had to take Lambert to the hospital on September 17, 2014. While at the hospital, Lambert's wife called XGS to inform it that Lambert was hospitalized and would require time off to treat his condition. During this phone call, an XGS employee informed Lambert's wife that Lambert would not need to invoke his FMLA rights; rather, she was told that Lambert could use his unused vacation days to cover his absence. Lambert alleges that he subsequently received a confirmation e-mail from XGS stating that Lambert could use his unused vacation days while recovering.

However, upon returning to work a few days later, XGS informed Lambert that his absence was unexcused and that he faced disciplinary action, possibly in the form of termination. Lambert was told that in order to avoid discipline, he would need to invoke his FMLA rights. Lambert attempted to discuss this issue, as well as his continued complaints regarding Hilkene's alleged discriminatory behavior, with the H.R. department; however, he was met with a great deal of antagonism regarding both issues.

Lambert alleges that on October 1, 2014, XGS terminated Lambert's co-worker for "speaking up" to Hilkene about Hilkene's treatment of Lambert. On October 7, 2014, Lambert was called into a meeting with executives from XGS where he was yelled at and interrogated regarding his management of the XGS Pittsburgh facility. That same day, Lambert was terminated from his position at XGS after his attorney informed the H.R. department that he was invoking his FMLA rights.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which the pleader must come forward with "a short and plain statement of the claim showing that

the pleader is entitled to relief."[3] To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[4] and also "raise a right to relief above the speculative level."[5]

When faced with a motion to dismiss under Rule 12(b)(6), the Court separates the factual and legal elements of a claim.[6] The well-pleaded facts are accepted as true, but legal conclusions may be disregarded.[7] Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"[8] This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[9] It does not, however, "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of the claim.[10]

## IV. DISCUSSION

Defendant seeks dismissal of Lambert's claims for (1) Hostile Work Environment under

---

[3] Fed. R. Civ. P. 8(a).

[4] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[5] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).

[6] Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

[7] Id. at 210-11; see also Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted).

[8] Fowler, 578 F.3d at 211.

[9] Iqbal, 556 U.S. at 679.

[10] Twombly, 550 U.S. at 545.

the ADEA and the PHRA, and (2) Failure to Accommodate under the ADA and PHRA.[11] These claims will be discussed in turn.

A hostile work environment claim for age-based discrimination under the ADEA is analyzed under the same standards as a Title VII hostile work environment claim.[12] Accordingly, to state a facially plausible hostile work environment claim under the ADEA, a complaint must allege that: "(1) the employee suffered intentional discrimination because of [his age]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same age in that position; and (5) the existence of *respondeat superior* liability."[13] To determine whether the perceived conduct is pervasive and regular enough to violate the ADEA, the Court must consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[14]

XGS argues that Lambert's hostile work environment claim should be dismissed because Lambert's amended complaint fails to sufficiently claim that the alleged discriminatory conduct

---

[11] The parties are in agreement that said PHRA claims should be analyzed under the same framework as the hostile work environment claim under the ADEA and the failure to accommodate claim under the ADA, respectively. Accordingly, the Court's discussion regarding these federal claims is equally applicable to, and dispositive of, Lambert's corresponding PHRA claims. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

[12] Slater v. Susquehanna Cnty., 465 F. App'x 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim.") (citing Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) and Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834 (6th Cir. 1996)).

[13] Huston v. Procter & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009).

[14] Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

was pervasive and regular.[15] Rather, XGS maintains that Lambert's amended complaint only "describes a few isolated stray remarks, some of which are not objectively discriminatory."[16] XGS also claims that many these alleged stray remarks asserted in Lambert's amended complaint were directed at someone other than Lambert.[17]

When viewing Lambert's allegations in a light most favorable to Lambert, however, the Court finds that the amended complaint sufficiently alleges enough facts to raise a reasonable expectation that discovery may reveal that the purported discrimination described therein was pervasive and regular. Although many of the alleged ageist comments about Lambert were apparently made to other XGS employees and not to Lambert himself, on numerous occasions, Lambert, as well as other XGS employees, allegedly reported to XGS's Human Resource Department that Lambert was subjected to age-related discriminatory conduct. Lambert also filed a charge of discrimination with the EEOC regarding the treatment he received at XGS, at least apparently in part, because of his age, and shortly thereafter, he was confronted by Hilkene in a hostile manner, which aggravated Lambert's PTSD, preventing Lambert from sleeping for several days and resulting in Lambert needing to be hospitalized for several days. Furthermore, it can be inferred from the allegations in the amended complaint that Lambert's work duties at XGS were restricted in connection with the age-discrimination to which he was subjected. Consequently, at this early stage of the proceedings, the Court finds that it would be premature to dismiss this hostile work environment claim on the basis that the alleged discrimination was not pervasive and regular.

---

[15] Def.'s Br. in Supp. at 6, ECF 13.

[16] Id.

[17] Id. at 7.

XGS also seeks to dismiss Lambert's claims for a failure to accommodate under the ADA relating to his PTSD.[18] To establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination."[19] "The ADA specifically provides that an employer 'discriminates' against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'"[20] An employee can demonstrate that an employer breached its duty to provide reasonable accommodations by showing that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.[21]

XGS argues that this claim should be dismissed because Lambert was not actually prevented, threatened with discipline, or terminated in connection with his request to take time

---

[18] XGS also initially moved to dismiss Lambert's claim that XGS failed to accommodate his separate disability, type 1 diabetes. However, in its Reply Brief, XGS withdrew "its Rule 12(b)(6) challenge to Mr. Lambert's claim that XGS failed to accommodate his diabetes." ECF No. 19 at 3. Therefore, the Court need not address this claim in this discussion.

[19] Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 761 (3d. Cir. 2004).

[20] Id. (alterations in original) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (quoting 42 U.S.C. § 12112(b)(5)(A))).

[21] Id. at 771-72.

off work due to being hospitalized as a result of his PTSD.[22] Lambert counters that although he was able to take time off of work to be in the hospital to treat his PTSD, when he returned he was effectively punished for his absence, notwithstanding XGS' representation that he could use his unused vacation days. The Court agrees with Lambert. Because the Court must draw all reasonable inferences in a light most favorable to Lambert, the Court rejects XGS' assertion that Lambert was afforded all of the leave that he needed to treat his PTSD condition when he alleges that he faced discipline and was ultimately fired in connection with this incident.[23]

XGS also argues that this claim should be dismissed because a request for FMLA leave is not a request for reasonable accommodation under the ADA.[24] Although the Court acknowledges that there are cases where courts have reached this conclusion,[25] the United States Court of Appeals for the Third Circuit has recently "recognize[d] that a request for FMLA leave may qualify *in certain circumstances* as a request for an accommodation under the ADA."[26] This Court has also recently observed that a "request for sick leave pursuant to the FMLA may qualify as a request for accommodation under the ADA where, as here, the FMLA leave is requested because of the employee's serious health condition."[27] In this case, it can be inferred from the allegations in the amended complaint that Lambert's request for FMLA was directly related to his PTSD. As such, at this early stage of the proceedings, it would be premature to

---

[22] Def.'s Br. in Supp at 10-11, ECF No. 13

[23] See Def.'s Reply Br. at 3-4, ECF No. 19.

[24] Id. at 4-5.

[25] See Capps v. Mondelez Global, LLC, — F.Supp.3d —, —, 2015 WL 7450539, *9 (E.D.Pa. 2015) and Rutt v. City of Reading, Pa., 2014 WL 5390428, *4 (E.D.Pa. 2014).

[26] McCall v. City of Philadelphia, 629 Fed. App'x 419, 422 (3d Cir. 2015) (citing 29 C.F.R. § 825.702(c)(2)) (emphasis added).

dismiss this claim, as the amended complaint contains sufficient allegations to withstand XGS' motion.

## V. CONCLUSION

Based on the foregoing, Defendant's motion to dismiss Counts I, II, VII, and VIII of the amended complaint is denied. An appropriate Order follows.

Dated: <u>April 26, 2016</u>

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

---

[27] Mangel v. Graham Packaging Co., L.P., 2016 WL 1266257, *4 (W.D.Pa. April 1, 2016).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LAMBERT, | ) | |
| | ) | Civil Action No. 15-1451 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| XPRESS GLOBAL SYSTEMS, INC. | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| | ) | |
| Defendant. | ) | |

**ORDER**

**AND NOW**, this 26th day of April, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** that Defendant Xpress Global Systems, Inc.'s Motion to Dismiss Counts I, II, VII, and VIII of Plaintiff's Amended Complaint is **DENIED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF